UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY WILLOUGHBY,

                              Case No. No. 14-10861

         Plaintiff,              District Judge Marianne O. Battani

v.                           Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Kelly Willoughby ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #17] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #15].

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on June 20 2011 and August 8, 2011 respectively,

-1-

alleging disability as of June 5, 2006[1] (Tr. 176-179, 180-186).  Upon initial denial of the

claim, Plaintiff requested an administrative hearing, held on November 8, 2012 in Detroit,

Michigan (Tr. 41).  Administrative Law Judge ("ALJ") Michael R. Dunn presided (Tr. 41).

Plaintiff, represented by Randall Mansour, testified, as did Vocational Expert ("VE") Harry

Sinoit (Tr. 47-61, 61-66).  On January 22, 2013, ALJ Dunn determined that Plaintiff was

capable of a significant range of unskilled, exertionally light work (Tr. 20-36).  On February

3, 2014, the Appeals Council denied review of the claim.  Plaintiff filed suit in this Court on

February 25, 2014.

## II.  BACKGROUND FACTS

Plaintiff, born December 4, 1961, was 51 at the time of the administrative decision

(Tr. 36, 176).  She graduated from high school and completed two years of college (Tr. 219).

She worked previously as an accounts payable assistant, secretary, cashier, homemaker,

receptionist, substitute teacher, and telemarketer (Tr. 219-220).  She alleges disability as a

---

[1]

Plaintiff made an earlier claim for benefits which was denied on April 16, 2010 (Tr. 20, 69-85).  Acquiscence Ruling ("AR") 98-4(6) states that in the absence of new and material evidence postdating an earlier decision under the same Title, the later fact finder *must* adopt the previous RFC. (emphasis added).  *See also Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997).  In order to be awarded benefits . . . subsequent to the original finding of non-disability, a claimant "must demonstrate that her condition has so worsened . . . that she was unable to perform substantial gainful activity." *Priest v. Social Security Admin,* 3 Fed.Appx. 275, 276, 2001 WL 92121, *1 (6th Cir. January 26, 2001)(citing *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1232-33 (6th Cir.1993)).

result of arthritis, migraines, fibromyalgia, depression, anxiety, carpal tunnel, asthma, a torn rotator cuff, and hives (Tr. 218).

### A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset date to June 15, 2011* (Tr. 45-46).

Plaintiff offered the following testimony:

She currently lived in Port Huron, Michigan with her parents (Tr. 47).  She did not work (Tr. 47).  She held a valid driver's license but did not drive more than once a week (Tr. 47).  She was divorced with three grown children (Tr. 48).  She held an associate's degree in Business Management (Tr. 48).  She had not worked since February, 2011 (Tr. 48).   She last worked as a substitute school librarian (Tr. 49).  She worked for 20 hours a week in 2008 and 2009 at a dollar store (Tr. 49).  She stopped working at the dollar store after undergoing surgery for a pulled groin muscle (Tr. 50).

She experienced "overwhelming pain on a daily basis" as a result of osteoarthritis of the back, right knee, right ankle, and left ankle (Tr. 50).  She also experienced sharp right shoulder pain radiating into the right arm caused by rotator cuff problems (Tr. 50).  She experienced bilateral hand pain and stiffness due to rheumatoid arthritis (Tr. 51).  She coped with the rheumatoid arthritis by using hot water and gloves (Tr. 51, 54-55).  She also experienced carpal tunnel syndrome ("CTS"); depression and anxiety; and migraine headaches precipitated by anxiety attacks (Tr. 51).  She had also been diagnosed with

-3-

fibromyalgia (Tr. 51).

Plaintiff spent most of her waking hours in a recliner with her feet on a pillow (Tr. 51). She saw a psychological therapist about once a week (Tr. 53). Both her psychotropic and pain medications were prescribed by a family doctor (Tr. 53). She experienced the side effect of sleepiness from Zanaflex and Topamax and emotional flatness from Effexor (Tr. 54). She was unable to walk more than a few feet or sit for more than 15 minutes before experiencing pain (Tr. 55). Sitting for extended periods caused joint stiffness (Tr. 56). She was able to perform laundry chores, make simple meals, and load a dishwasher (Tr. 56). She grocery shopped with the help of her parents (Tr. 57). She crocheted as a hobby but was unable to "get through" more than a washcloth sized panel at a time (Tr. 57). She kept two cats as pets (Tr. 57).

In response to questioning by her attorney, Plaintiff reported that sitting for extended periods caused hip pain radiating into her shoulder blades and knees (Tr. 57). She noted that she had undergone left side rotator cuff surgery but now experienced right shoulder pain (Tr. 57). She was unable to lift either arm above shoulder length (Tr. 58). She testified that she was unable to lift more than 10 pounds (Tr. 58). She reported that as a result of depression, she experienced feelings of helplessness and uselessness leading her to isolate herself in her bedroom (Tr. 59). She alleged migraines as a result of weather changes and stress (Tr. 59). She indicated that she avoided daytime naps due to nighttime sleep disturbances (Tr. 60). She reported the regular use of an ankle brace (Tr. 60). She reported that she quit one of her

former jobs in 2006 when she experienced a "nervous breakdown" (Tr. 60-61). She stated that she quit the job for her "physical and mental health" (Tr. 61).

### B. Medical Records[2]

#### 1. Records Related to Plaintiff's Treatment

March, 2010 imaging studies of the left leg were negative for deep vein thrombosis (Tr. 283).

May, 2011 medical records show diagnoses of fibromyalgia, migraine headaches, and CTS (Tr. 323). June, 2011 treating records note a right rotator cuff tear treated with Toradol, Vicodin, and trigger point injections (Tr. 293). Mental health assessment records from the same month note that Plaintiff had been turned down a second time for disability benefits but maintained that she was unable to work due to "emotional and physical problems" (Tr. 305). She denied suicide plans (Tr. 306). July, 2011 psychological intake records state that Plaintiff reported depression (Tr. 295). She denied inpatient psychiatric treatment (Tr. 295). She reported spending extended periods in her bedroom sitting in a recliner, using the computer, visiting facebook, reading, or making jewelry (Tr. 295). The thought of working gave her anxiety attacks (Tr. 296). She was deemed "pleasant and cooperative" (Tr. 297). She denied problems in personal care activities or performing activities of daily living (Tr. 315). Mohammad Saeed, M.D. assigned her GAF of 40 due to

---

[2]Records created prior to the amended alleged onset date of June 15, 2011 are included for background purposes only.

anxiety, depression, migraine headaches, and unemployment[3] (Tr. 297). Diane Junglas, Ph.D., noted that although Plaintiff did "not meet all of the criteria for . . . somatization disorder," she had "many psychosomatic symptoms" (Tr. 300). She exhibited a "moderate" degree of dysfunction in mood range (Tr. 307). Plaintiff stated that she wanted "an income stream so she [could] support herself independently" (Tr. 301). The following month, psychologist Thomas Pope, LLP noted a depressed mood (Tr. 294).

October, 2011 medical records noted Plaintiff's report of severe knee and arm pain (Tr. 322). On January 10, 2012, Lela Torres, M.D. (noting that she first saw Plaintiff on October 20, 2011) completed a questionnaire regarding Plaintiff's physical abilities, finding that Plaintiff's "emotional factors" contributed to the functional limitations (Tr. 336). Dr. Torres found that Plaintiff's pain would create workplace distractions on a frequent basis (Tr. 336). She found that Plaintiff could perform "moderate stress" work (Tr. 336). She found that Plaintiff could walk for up to two blocks, sit for 30 minutes at a time and stand up to 20 minutes (Tr. 336). Dr. Torres found that Plaintiff was limited to four hours sitting and two hours standing or walking in an eight-hour workday (Tr. 337). She opined that Plaintiff required a job with a sit/stand option and would require unscheduled work breaks (Tr. 337). She found that Plaintiff did not require the use of a cane but was unable to lift more than 50

---

[3]

A GAF score of 31–40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders–Text Revision,* 34 ( "*DSM–IV–TR*" )(4th ed.2000).

pounds or twist, stoop, crouch, or climb on more than a "rare" basis (Tr. 337).  Dr. Torres concluded that Plaintiff's symptoms would result in absences more than four days each month (Tr. 338).  The following month, medical treating notes state that Plaintiff reported fatigue (Tr. 346).

The same month, psychologist Pope found that Plaintiff's current GAF was 40 as a result of anxiety, depression, and personality disorders (Tr. 340).  He found that Plaintiff's condition was characterized by dependence on others, disturbances in effect, concentrational problems,  sleep disturbances, and panic attacks  (Tr. 341).  March, 2012 treating records by Nick J. Riena, M.D. state that Plaintiff was fully oriented with an anxious affect and normal muscle tone and gait (Tr. 352).  In September, 2012, psychologist Pope assigned Plaintiff a GAF of 40 (Tr. 356).   He noted the presence of "numerous somatic complaints" including fibromyalgia, arthritis, migraine headaches, and hypotension (Tr. 364).  Plaintiff exhibited good grooming and "fluent and coherent" speech (Tr. 363).  She denied limitations in activities of daily living (Tr. 368).  Her condition was "remarkable" for depressed mood, "impaired but reality based" judgment, and "fair" insight (Tr. 374).

The following month, Dr. Torres completed a second questionnaire, noting that Plaintiff was now unable to handle even low stress jobs, or sit or stand for more than 15 minutes  (Tr. 381).  Dr. Torres found that Plaintiff was unable to sit or stand for more than two hours over the course of an eight-hour workday (Tr. 382).  She found additionally that Plaintiff was limited to 10 pounds lifting on a "rare" basis (Tr. 382).

-7-

## 2.  Other Records

In November, 2011, R. Scott Lazzara, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's reports of degenerative arthritis characterized by pain and stiffness of the lumbar spine, right knee and ankle, and left shoulder (Tr. 324).  Plaintiff also reported diagnoses of CTS and fibromyalgia (Tr. 324).  Plaintiff denied undergoing physical therapy (Tr. 324).  She stated that she could perform light household chores, make jewelry, and crochet (Tr. 324).  She estimated that she could walk for two blocks, stand for 10 minutes, and walk for 15 minutes (Tr. 324).  She exhibited a normal memory, good grip strength, mild difficulty walking and squatting, and no difficulty hopping (Tr. 235).  Dr. Lazzara, noted the probable diagnosis of "mild osteoarthritic disease" (Tr. 327).

## 2.  Records Submitted After the ALJ's January 22, 2013 Determination

November, 2012 medical treating records state that Plaintiff experienced body aches (Tr. 385).

## C.  Vocational Testimony

VE Sinoit classified Plaintiff's past work as an accounts payable clerk, receptionist, and telemarketer as semiskilled and exertionally sedentary (exertionally light as performed by Plaintiff); administrative assistant, skilled/sedentary (light as performed); and cashier, unskilled/light[4]   (Tr. 62-63).   The ALJ then posed the following question to the VE,

_____

[4]

20 C.F.R. § 404.1567(a-d) defines _sedentary_ work as "lifting no more than 10 pounds

-8-

describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume we're talking about a worker capable of light exertional activity as defined in the regulations, lifting and carrying up to 20 pounds occasionally, 10 pounds frequently, sitting for six out of eight, standing for six out of eight hours, and walking for six out of eight hours. I want you to assume the worker is capable of pushing and pulling as much as I've indicated could be lifted and carried; however, I also want you assume that the worker should not engage in overhead lifting, is limited bilaterally to frequent handling and fingering, can occasionally climb ramps and stairs, but should never climb ladders or scaffolds, can occasionally stoop, kneel, crouch, or crawl. I'm going to ask you to assume our worker should not be exposed to unprotected heights and must avoid hazardous machinery, needs to avoid concentrated exposure to wetness and humidity, should avoid exposure to excessive vibration, should not be exposed to extreme cold. Now I'm going to also ask you to assume that because of the impairment in concentration, persistence, and pace secondary to medication side effects, pain, and the distracting nature of pain that the work needs to be limited to simple, routine, and repetitive unskilled tasks performed at SVP[] 1 or 2 as defined in the *Dictionary of Occupational Titles* and should it be free of [fast] paced production . . . requirements. There should be few if any work place changes, and additionally the work should not require anything more than simple work related decisions. There should be no more than occasional interaction with the public. Now, based upon those assumed facts, could such a worker perform any of the claimant's past work as you've described it? (Tr. 64).

The VE found that the above limitations would preclude Plaintiff's past relevant work,

but would allow for the unskilled, exertionally light work of a hand packager (2,500 positions

---

at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

in the regional economy); small products assembler (2,500); and visual inspector (1,000) (Tr. 65). The VE testified further that if the same individual also required a sit/stand option allowing her to change position every 30 minutes and was limited to "no more than occasional interaction with supervisors and coworkers and no interaction with the general public," the job numbers would remain unchanged (Tr. 65). The VE stated if the same individual were limited to occasional bilateral fingering; were "off task" 20 percent of the workday due to medication side effects and the need to change position; or, missed more than three days or more of work each month, all work would be precluded (Tr. 65-66).

### D. ALJ Witten's July 25, 2012 Decision

Adopting the previous April 16, 2010 determination (Tr. 69-85) pursuant to *Drummond v. Commissioner of Social Security,* 126 R. 3d 837 (6th Cir. 1997), the ALJ found that Plaintiff experienced the severe impairments of "depressive disorder, anxiety and panic disorder, status post rotator cuff surgery, mild osteoarthritis, and fibromyalgia" but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 24). The ALJ determined that Plaintiff could perform light work with the following additional restrictions:

> [N]o overhead lifting bilaterally; only frequent handling and fingering bilaterally; occasional climbing of ramps and stairs; should never climb ladders, ropes, or scaffolds; occasionally can stoop, kneel, crouch, and crawl; should not be exposed to unprotected heights; should avoid hazardous

machinery; should avoid concentrated exposure to wetness and humidity; should avoid exposure to excessive vibration; should not be exposed to extreme cold; work is limited to simple, routine and repetitive unskilled tasks at an SVP 1or 2 . . ., free of fast-paced production requirements, with few, if any workplace changes; work should not require not more than simple work-related decision; and there should be no more than occasional interaction with the public (Tr. 25, 77).

The ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform the light work of a hand packager, small products assembler, and visual inspector (Tr. 35, 80).

The ALJ discounted Plaintiff's alleged degree of physical and mental limitation, noting that "the objective evidence of record weighs heavily against [Plaintiff's] allegations . . ." (Tr. 34). He observed that she received psychotropic medicine from a family physician but had not received psychiatric care (Tr. 34). He noted that Plaintiff was able to shop, perform laundry chores, prepare meals, drive, socialize, play computer games, and read (Tr. 34). The ALJ remarked that the above-stated RFC addressed "demands that might exacerbate" Plaintiff's psychological "symptomology" (Tr. 34).

## III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401,

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).   The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).   In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."   *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.   20 C.F.R. §416.920(a).   The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  The Step Three Determination

Plaintiff faults the ALJ's determination that the conditions of depression and anxiety did not result in a disability finding at Step Three.  *Plaintiff's Brief*, 14-18, *Docket #15* (*citing* Tr. 23)*.*  She contends that the ALJ failed to provide a rationale for his finding that she experienced only mild limitation in activities daily living and social functioning, and only moderate limitation in concentration, persistence, or pace.  *Id.*  (citing Tr. 24).

An ALJ is required to provide an explanation for his Step Three findings.  *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 416, 2011 WL 1228165, *3-4 (6th Cir. April 1, 2011)(remand granted on the basis that "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments ... met or equaled a Listing" at Step Three of analysis).   In determining that Plaintiff did not meet or equal either Listing 12.04 (affective disorders) or Listing 12.08 (personality disorders) ALJ Dunn stated simply that Plaintiff experienced mild difficulties in activities of daily living and social functioning and moderate

-13-

deficiencies in concentration, persistence, or pace[5] (Tr. 24).

To be sure, the ALJ's rationale for the Step Three findings is not stated directly following the finding of mild and moderate functional limitations. However, the administrative decision as a whole contains ample support for the Step Three findings. In regard to the professed psychological limitations, the ALJ noted that Plaintiff got along with her family, shopped with her boyfriend, was able to follow oral and written instructions, play computer games, and use Facebook (Tr. 30). The finding that Plaintiff did not experience marked psychological limitations is further supported by the ALJ's observation that Plaintiff regularly engaged in the activities of shopping, laundry, meal preparation, and driving (Tr. 34). I am unaware of any case, including *Reynolds*, that states that all of the evidence supporting the Step Three finding must also be cited in that portion of the opinion. *See Bledsoe v. Barnhart,* 165 F. App'x 408, 411, 2006 WL 229795, *2 (6th Cir. January 31, 2006)(an ALJ's Step Three findings need not include a detailed discussion of why the claimant's condition does not meet a listing, so long as the ALJ's factual findings, taken as a whole, establish non-disability at Step Three). See also *Staggs v. Astrue*, 2011 WL 3444014, *3 (M.D.Tenn. August 8, 2011)(citing *Bledsoe*, at 411, *2) (Sixth Circuit has "implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis")*; Smith-Johnson v. Commissioner of Social Sec.,* 579 Fed.Appx. 426, 435,

---

[5]Under either section, Plaintiff would be required to show at least two "marked" limitations or one marked limitation and repeated episodes of decompensation to establish disability at Step Three. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § § 12.04, 12.08.

-14-

2014 WL 4400999, at *5 (6th Cir. September 8, 2014)(*same*).  The Sixth Circuit "has emphasized that there is no 'heightened articulation standard' " at Step Three.   *Snoke v. Astrue*, 2012 WL 568986, *6 (S.D.Ohio 2012) (*citing Bledsoe*, at 411). As such, "an ALJ is not obligated to 'spell out every consideration that went into the step three determination'") (punctuation omitted). *Id.*, citing *Bledsoe* at 411.  Because the ALJ's decision, read in its entirety, contains ample support for the conclusion that Plaintiff experienced only mild limitation in daily living and social functioning and moderate concentrational limitations, remand on this basis is not warranted.

### B.  Dr. Torres' Assessments

Plaintiff also contends that the ALJ erred by failing to adopt either the January, 2012 or October,  2012 opinions of disability by Dr. Torres.  *Plaintiff's Brief* at 18-20 (citing Tr. 29-31, 336-338, 380-382).  Citing *Wilson v. CSS,* 378 F.3d 541, 544 (6th Cir. 2004), she argues that the rejection of Dr. Torres' opinions was not supported or explained.  *Id.*

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error.  *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546; 20 C.F.R.  §  404.1527(c)(2)).  "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

-15-

adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"
*Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

Contrary to this argument, the ALJ's explanation for rejecting Dr. Torres' assessments
is well supported and explained. First, the ALJ stated that he considered "the length,
frequncy, nature, and extent of the treatment relationship, the supportability and consistency
of [Dr. Torres'] conclusions" as required by § 404.1527(c)(2) (Tr. 29). He restated Dr.
Torres' January, 2012 assessment in detail, noting that the restrictive findings stood at odds
with Dr. Torres' own treatment notes up to that date suggesting a lesser degree of restriction
(Tr. 29-30). Despite Plaintiff's allegations of anxiety, Dr. Torres' treating notes state that
Plaintiff appeared "alert" and "non-distressed" (Tr. 332). November, 2011 records state that
Plaintiff reported some improvement from the use of predinsone (Tr. 331). Plaintiff's reports
of musculoskeletal problems, as documented in Dr. Torres' records, are wholly unsupported
by objective testing (Tr. 331). Notably, the late November, 2011 treating records state that
x-rays had not been taken (Tr. 332). As such, the ALJ did not err by declining to accept Dr.
Torres' January, 2012 statement of severe physical limitation (Tr. 336). On a related note, the
ALJ permissibly noted that Dr. Torres opinion was undermined by the fact that she had not
begun treating Plaintiff until three months before making the assessment (Tr. 30).

The ALJ also addressed Dr. Torres' October, 2012 renewed assessment (Tr. 31). He
noted that the assessment stated a greater degree of limitation than in January, 2012 (Tr. 31,
381-382). The ALJ acknowledged Dr. Torres' opinion that Plaintiff was unable to perform

even low-stress work and required an assistive device for occasional walking (Tr. 31). The ALJ noted Dr. Torres' updated finding that Plaintiff was limited to using her hands and fingers on a rare basis (Tr. 31). However, the ALJ found that "[c]ontrary to Dr. Torres' assertion of a declining prognosis, there is no clear objective evidence to indicate that [Plaintiff's] condition has significantly worsened" (Tr. 31).

The ALJ did not err in finding that Dr. Torres' October, 2012 findings were unsupported by the records created between January and October, 2012. Plaintiff's allegations of physical problems contrast sharply with the records from this period showing a normal muscle tone and gait (March, 2012), denial of restrictions in activities of daily living (September, 2012), and observations of "numerous," but poorly supported "somatic complaints" (Tr. 352, 364, 368). The ALJ's discussion and rejection of Dr. Torres' October, 2012 assessment is followed directly by the ALJ's rationale for the finding that Plaintiff was capable of exertionally light work.

In addition to arguing that the October, 2012 assessment ought to have been adopted, Plaintiff contends that the ALJ erred by declining to articulate "good reasons" for discounting the assessment. *Plaintiff's Brief* at 19. She asserts that the ALJ "completely fail[ed] to identify the weight" assigned the October, 2012 assessment. *Id.* The ALJ, referencing his earlier-stated rejection of Dr. Torres' January, 2012 opinion, found that the *renewed* assessment of worsening symptoms made in October, 2012 was similarly unsupported by objective evidence (Tr. 31). A plain reading of the ALJ's discussion indicates that he gave

-17-

no more than scant credence to either of Dr. Torres' checklist assessments (Tr. 29-30, 31). As such, a remand is not warranted on this basis.

### C.  Thomas Pope's Findings

Finally, Plaintiff argues that the ALJ's reasons for rejecting Pope's assessment were impermissibly "vague." *Plaintiff's Brief* at 20-21.  She contends that although psychologist Pope was not an "acceptable medical source" pursuant to SSR 06-03p, the ALJ was required to consider the length, frequency, and nature of the treatment consistent with the requirements for a "treating physician" analysis.  *Id.*

Plaintiff is correct that while psychologist Pope is not an "acceptable medical source," his opinion is entitled to consideration.  "The agency's regulations limit treating sources to 'acceptable medical sources . . . '" *Cole, supra,* 661 F.3d at 939; 20 C.F.R. § 404.1502.  As a mental health counselor, Pope is excluded from the category of acceptable medical sources. 20 C.F.R. § 404.1513(a).  Nonetheless,  his opinion "is entitled to consideration due to [his] expertise and long-term relationship" with Plaintiff.  *Cole* at 939; 20 C.F.R. § 404.1513(d)(1). In weighing the opinions of "other sources," it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  SSR 06–3p 2006 WL 2329939, *2 (2006).

Pope's February, 2012 assessment includes his findings of disability level psychological limitation as a result of an abnormal effect, concentrational problems, sleep

-18-

disturbances and panic attacks (Tr. 340-341).   However, the ALJ did not err in noting that Pope's findings of disabling symptoms stood at odds with Plaintiff's ability to visit others for lunch, shop, see her boyfriend, follow written instructions, and play computer games (Tr. 30, 260).   The ALJ cited the report by Plaintiff's mother stating that her daughter was able to engage in jewelry making (to a limited extent), could dress herself, and shared the family's cooking chores (Tr. 249-250).   Pope's assessment of severe concentrational deficiencies is also undermined by Plaintiff's mother's statement that her daughter's mind was "fine" (Tr. 251).   The ALJ's reliance on the observations of Plaintiff's mother to discount Pope's findings is particularly appropriate given that as a family member, her opinion is also entitled to consideration.   *See* 20 C.F.R. § 404.1513(d)(4)(ALJ permitted to rely on non-medical "other sources" such as relatives, friends, neighbors, and clergy).

Moreover, Plaintiff's description of her own fairly wide range of activities (including driving and shopping) undermines Pope's finding that her activity was severely limited by anxiety and depression.   The ALJ's conclusion that Pope's assessment was "out of proportion" with Plaintiff's own description of her activities is well supported.   Because the ALJ's rejection of Pope's opinion was well supported and explained, a remand should not be granted on this basis.

The ALJ's decision, supported by substantial evidence and well articulated, is well within the "zone of choice" accorded the administrative fact-finder and thus, should not be disturbed by this Court.   *Mullen supra,*   800 F.2d at 545.

-19-

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #17] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 27, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 27, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager